## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jama A.O.,

                  Petitioner,

v.

Pamela Bondi, *Attorney General*; Kristi
Noem, *Secretary, U.S. Department of
Homeland Security*; Todd M. Lyons,
*Acting Director of Immigration and
Customs Enforcement*; Marcos Charles,
*Acting Executive Associate Director for
Enforcement and Removal Operations*;
David Easterwood, *Acting Director, St.
Paul Field Office Immigration and
Customs Enforcement*; Ted H. Kim,
*Associate Director of USCIS Refugee,
Asylum and International Operations
Directorate*; Luis Borjas, *Field Office
Director*, *U.S. Citizenship and
Immigration Services St. Paul-
Minneapolis Field Office*; and U.S.
Department of Homeland Security,

                  Respondents.

Civil No. 26-420 (DWF/ECW)

**MEMORANDUM
OPINION AND ORDER**

## INTRODUCTION

This matter is before the Court on Petitioner Jama A.O.'s petition for a writ of

habeas corpus alleging that he is in custody in violation of the Constitution and laws of

the United States ("the Petition").  (Doc. No. 1.)  Petitioner seeks immediate release from

detention in addition to other relief.  (*Id.*)  Respondents did not answer the Petition by the

Court's deadline.  (Doc. No. 8.)  For the reasons set forth below, the Court grants the Petition and orders Respondents to release Petitioner from custody immediately.

## BACKGROUND

Petitioner is a citizen of Somalia who entered the United States lawfully as a refugee on October 25, 2010.  (Doc. No. 1 ¶ 2.)  Petitioner has a pending application to adjust his status to that of a lawful permanent resident.  (*Id.* ¶ 3; Doc. No. 1-3.)  That application was filed on February 2, 2021.  (Doc. No. 1-3.)  On March 24, 2025, Petitioner filed an I-602 waiver for some minor criminal history.  (*Id.* ¶ 4.)

On January 9, 2026, U.S. Custom and Immigration Services ("USCIS") issued a press release concerning the launch of Operation PARRIS [Post-Admission Refugee Reverification and Integrity Strengthening] in Minnesota, "a sweeping initiative reexamining thousands of refugee cases through new background checks and intensive verification of refugee claims."  *DHS Launches Landmark USCIS Fraud Investigation in Minnesota*, USCIS (Jan. 9, 2026), https://www.uscis.gov/newsroom/news-releases/dhs-launches-landmark-uscis-fraud-investigation-in-minnesota.  The stated goal of the program is to target fraudulent refugee applications in Minnesota.  (*See id.*; Doc. No. 1 ¶ 54.)

On January 18, 2026, immigration agents employed by U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner.  (Doc. No. 1 ¶ 5.)  Before his arrest, Petitioner received a phone call indicating that he had a package at the door, and when he answered the door, he was slammed to the ground by ICE officers who asserted that he was removable.  (*Id.* ¶ 6.)  During his arrest, ICE officers did not produce a warrant of

arrest.  (*Id.* ¶ 7.)  Petitioner alleges that Respondents have not charged Petitioner as deportable, have not issued a Notice to Appear under 8 U.S.C. § 1229a, have not issued a Notice of Intent to Terminate his refugee status, and have not otherwise taken any action consistent with detaining Petitioner.  (*Id.* ¶ 10 (citing 8 U.S.C. § 207.9).)

Petitioner filed both the Petition, requesting immediate release from ICE custody, and a related motion for a temporary restraining order on January 18, 2026.  (Doc. Nos. 1, 3.)  Petitioner asserts that his detention violates his procedural due process rights, the Immigration and Nationality Act ("INA"), the Administrative Procedures Act, and the *Accardi* doctrine.  (Doc. No. 1 ¶¶ 102-36.)  He requests, in part, an order declaring Respondents' actions arbitrary and capricious, that Respondents' failed to adhere to binding regulations and precedent, that Respondents' arrest of Petitioner violates the Fourth Amendment's reasonableness standard, and that Respondents' ongoing detention of Petitioner violates the Due Process Clause of the Fifth Amendment; an order enjoining Respondents from re-detaining Petitioner under 8 U.S.C. § 1159(a)(1) while his adjustment of status is pending; and attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).  (*Id.* at 38-39.)

Also on January 18, 2026, the Court temporarily enjoined Respondents from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota; or if Petitioner had already been removed from Minnesota, to immediately return Petitioner to Minnesota.  (Doc. No. 6 at 4.)  In addition, the Court ordered Respondents to provide Petitioner's counsel with 72-hours' notice prior to interviewing or speaking with Petitioner regarding his refugee status, or any other matter

related to his immigration status. (Doc. No. 6 at 5.) The Court denied Petitioner's request for immediate release from detention. (*Id.*)

Respondents were ordered to file an answer to the Petition on or before January 21, 2026 at 12:00 p.m. CT, and Petitioner was permitted a reply to Respondents' answer no later than January 22, 2026, at 12:00 p.m. CT. Respondents have failed to meet that deadline. Therefore, the Petition is unopposed.[1]

## DISCUSSION

A district court may provide habeas relief to a person who is being detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). That authority includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900-01 (D. Minn. 2020). The burden is on the petitioner to prove illegal detention by a preponderance of the evidence. *See Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

The Court starts and ends with Petitioner's claim that his detention violates his procedural due process rights. The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. Freedom from physical detention by the government is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Civil

---

[1]   Respondents filed a response at 4:26 p.m. CST. Because the response is untimely, the Court need not consider the arguments therein. Even so, those arguments do not change the Court's decision here, as explained below.

detention violates the Due Process Clause unless there is a "special justification" that "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (citation modified).

It is clear that Respondents' detention of Petitioner violates the Due Process Clause because they do not have authority to detain him. Petitioner entered the United States as a refugee. Under the INA, a "refugee" is defined as:

> (A) any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or (B) in such special circumstances as the President after appropriate consultation (as defined in section 1157(e) of this title) may specify, any person who is within the country of such person's nationality or, in the case of a person having no nationality, within the country in which such person is habitually residing, and who is persecuted or who has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42). Following screening and vetting procedures, refugees may be lawfully admitted to the United States. *See* 8 U.S.C. § 1157. A person who has obtained conditional status as a refugee is deemed to have been "admitted." *D-K-*, 25 I. & N. Dec. 761, 769 (B.I.A. 2012) ("[W]e conclude that under the language of the [INA] and regulations, and also in view of the context and structure of the provisions at issue, an alien admitted to the United States as a refugee has been 'admitted' for purposes of section 101(a)(13)(A) of the Act.").

After residing in the United States for one year, refugees are required to apply for adjustment of status to lawful permanent residence ("LPR"). 8 U.S.C. §1159(a). Thus, a

refugee's conditional admission can result in two "admissions" to the United States—the original conditional admission and second admission if the refugee is adjusted to LPR status. *Id.* at 768 (explaining that "a refugee who ultimately becomes a lawful permanent resident will have been 'admitted' twice—first, upon conditional admission under section 207 of the Act, and second, upon reinspection and adjustment to permanent resident status under section 209(a) of the Act").

Generally, a refugee may not be placed in removal proceedings unless that refugee's status has been terminated or their adjustment application denied. *See Garcia-Alzugaray*, 191 I. & N. Dec. 407, 410 (B.I.A. 1986). While admission as a refugee limits the ability of the government to place refugees in removal proceedings, there are certain situations where a refugee may be placed in removal proceedings. *D-K-*, 25 I. & N. Dec. at 769 (holding that removal proceedings may be initiated against a refugee whose refugee status has not been terminated, but that charges of removability "must be based on the grounds of deportability under section 237 of the [INA]"). For example, a refugee may be subject to removal for committing serious crimes, *see, e.g.*, *Xiong v. Gonzales*, 484 F.3d 530, 533-34 (8th Cir. 2007) (affirming placement of refugee in removal proceedings following conviction of an aggravated felony), or if the noncitizen is found to have not been a refugee as defined in the INA, *see* 8 U.S.C. § 1157(c)(4).

While Respondents failed to timely address the arguments made in the Petition, Petitioner anticipated that Respondents would assert authority to detain him under

6

8 U.S.C. § 1159(a)(1).[2]  That provision establishes a procedure for refugees to seek adjustment to LPR status after having been physically present in the United States for one year.

Here, Petitioner has refugee status and a pending application for adjustment to LPR status.  (Doc. No. 1-3.)  Under § 1159, a refugee who has been admitted under § 1157, and whose admission has not been terminated, but who has not yet attained LPR status, "shall, at the end of such year period, return or be returned to the custody of the [DHS] for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title." 8 U.S.C. § 1159(a)(1).  Respondent argues that Petitioner's detention is appropriate because he has not yet attained LPR status under § 1159(a)(1)(C).

Section 1159 contemplates a refugee's return to the custody of DHS for a limited time to allow the government to inspect and examine the refugee for admission.  *See Abdi F.W. v. Trump*, No. 26-cv-208, at 5 (D. Minn. Jan 21, 2026).  Per the plain text of the statute, any continued detention of a refugee under § 1159(a) must be based on the provisions of sections 1225, 1229a, and 1231.  Section 1225 provides mandatory-detention provisions that apply to certain arriving persons who are inadmissible, 8 U.S.C. §1225(b)(1), or who are deemed an "applicant for admission," *id.* §1225(b)(2)(A). Section 1231 mandates detention of any alien who has been ordered removed during a

---

[2]     Respondents' late response confirms that they are arguing that Petitioner's detention is lawful under § 1159(a)(1)(C) because Petitioner has not yet acquired legal permanent resident status.  (Doc. No. 8 at 2.)

90-day "removal period."  8 U.S.C. § 1231(a)(1)(A)-(B), (a)(2)(A).[3]  And section 1229a

governs removal proceedings.  8 U.S.C. § 1229a(a)(1).

 None of these sections apply to Petitioner.  Jama was conditionally admitted as a

refugee in October 2010, and nothing in the record suggests that Jama is subject to

mandatory detention under § 1225(b)(1) or (b)(2).  Section 1231 is inapplicable because

Jama has not been ordered removed.  Section 1229a is similarly inapplicable because

there is no evidence that Jama has been placed in removal proceedings.  Finally, to the

extent that Jama is being detained as he awaits determination on his LPR application,

"adjustment of status under [§ 1159] is not a sufficient ground to place [refugees] in

removal proceedings, and therefore not a proper basis for detaining them."  U.S. Immigr.

& Customs Enf't, *Memorandum on Detention of Refugees Admitted Under INA § 207*

*Who Have Failed to Adjust to Lawful Permanent Resident Status* 2 (May 10, 2010),

https://www.ice.gov/doclib/foia/policy/directive11039.1.pdf.  In addition, "[a] refugee

may not be placed in removal proceedings based on a failure to adjust status or to apply

for adjustment of status because an alien's failure to adjust status or apply for adjustment

under INA § 209(a) is not a ground of removability."  *Id.*; *see also Abdi F.W.*, No. 26-

208, at 7 (referencing DHS Guidance from 2010).

 For the above reasons, there has been no showing that § 1159(a) justifies

Petitioner's continued detention.  And other than the untimely assertion of authority

---

[3] Detenion beyond that time is allowed if the person is a risk to the community or unlikely to comply with a removal order. *Zadvydas*, 533 U.S. at 682 (citing 8 U.S.C. §1231(a)(6)).

under § 1159(a), Respondents have failed to provide valid legal justification for Petitioner's initial arrest or continued detention. The Court finds that Petitioner has submitted ample evidence in support of his refugee status and his pending adjustment application. Accordingly, there is no lawful basis for Petitioner's detention, and the Court orders his immediate release.

## ORDER

Based on the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner's Petition for Writ of Habeas Corpus (Doc. No. [1]) is **GRANTED**.

2. The Court declares that Petitioner's current detention is unlawful under the Constitution and laws of the United States.

3. Respondents are ordered to release Petitioner from custody immediately.

4. Within three (3) days of the date of this Order, Respondents shall provide the Court with a status update confirming Petitioner's release.

5. Within thirty (30) days of final judgment in this action, Petitioner may move to recover attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 23, 2026            s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge